The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LANDMARK TECHNOLOGY, LLC

                Plaintiff,

      v.

JONES SODA CO. AND JONES SODA CO.
(USA), INC.,

                Defendants.

CASE NO. 2:17-cv-00978-JLR

DEFENDANTS' LCR 3(F)
NOTICE OF RELATED CASE

      Defendants Jones Soda Co. and Jones Soda Co. (USA), Inc. (together, "Jones Soda"), by and through their counsel of record, give notice of the following related case pursuant to LCR 3(f): *Paint Sundries Solutions, Inc. v. Landmark Technology, LLC* (WAWD 2:17-cv-01073-TSZ).

      Paint Sundries Solutions, Inc. ("Paint Sundries") filed its Complaint against Landmark on July 14, 2017, two weeks after Landmark Technology, LLC ("Landmark") sued Jones Soda for patent infringement.  A copy of the Complaint is attached hereto as Exhibit A.  Paragraph 1 provides the following case overview:

> Landmark Technology is a non-practicing entity seeking royalties from Paint Sundries for alleged patent infringement of the '319 Patent. Paint Sundries seeks: (A) declarations that: (1) it has not infringed and does not infringe any valid and enforceable claim of the '319 Patent, (2) the '319 Patent is invalid, and (3) that Landmark Technology cannot enforce the '319 Patent; and (B) judgments that: (1) Landmark Technology's damages are limited based on its failure to comply with 35

DEFENDANTS' LCR 3(f) NOTICE OF RELATED CASE - 1
(2:17-cv-00978-JLR)

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

U.S.C. § 287, (2) Landmark Technology committed unfair competition by attempting to enforce and license the '319 in bad faith, and (3) that Landmark Technology violated Washington's bad faith patent assertion statute, RCW 19.86 *et seq.* and 19.350.020.

Accordingly, *Paint Sundries* is a "Related Case" under LCR 3(f) for at least the following reasons:

- Landmark is a party in both cases;

- Landmark has accused both Jones Soda and Paint Sundries of infringing the '319 Patent (patent number 6,289,319);

- Both cases involve questions regarding the validity or invalidity of the '319 Patent; and

- Both cases otherwise are expected to involve the same or similar claims, counter-claims and defenses.

DATED this 11th day of August, 2017.

Respectfully submitted,

SUMMIT LAW GROUP PLLC
Attorneys for Defendants Jones Soda Co.
and Jones Soda Co. (USA), Inc.

By *s/ Christopher T. Wion*
    Christopher T. Wion, WSBA #33207
    315 Fifth Avenue So., Suite 1000
    Seattle, WA 98104
    chrisw@summitlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

John A. Lee
Banie & Ishimoto LLP
3705 Haven Ave., #137
Menlo Park, CA 94025
*jlee@banishlaw.com*

DATED this 11th day of August, 2017.

*/s Katie Angelikis*
Katie Angelikis, Legal Assistant

DEFENDANTS' LCR 3(f) NOTICE OF RELATED CASE - 3
(2:17-cv-00978-JLR)

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PAINT SUNDRIES SOLUTIONS, INC., | No. |
| Plaintiff, | |
| v. | **COMPLAINT FOR DECLARATORY JUDGMENT AND UNFAIR COMPETITION** |
| LANDMARK TECHNOLOGY, LLC, | |
| Defendant. | **JURY TRIAL DEMANDED** |

Plaintiff, Paint Sundries Solutions, Inc., ("Paint Sundries") by and through its attorneys of record, files this Complaint for Declaratory Judgment of Non-Infringement and Declaratory Judgment of Invalidity of U.S. Patent No. 6,289,319 (the '319 Patent) and unfair competition against Defendant Landmark Technology, LLC ("Landmark Technology").

<u>**INTRODUCTION**</u>

1. Landmark Technology is a non-practicing entity seeking royalties from Paint Sundries for alleged patent infringement of the '319 Patent. Paint Sundries seeks: (A) declarations that: (1) it has not infringed and does not infringe any valid and enforceable claim of the '319 Patent, (2) the '319 Patent is invalid, and (3) that Landmark Technology cannot enforce the '319 Patent; and (B) judgments that: (1) Landmark Technology's damages are limited based on its failure to comply with 35 U.S.C. § 287, (2) Landmark Technology committed unfair

COMPLAINT - 1
Case No.

competition by attempting to enforce and license the '319 in bad faith, and (3) that Landmark Technology violated Washington's bad faith patent assertion statute, RCW 19.86 *et seq.* and 19.350.020.

## **PARTIES**

2.      Paint Sundries is a corporation organized under the laws of the State of Washington with its principal place of business at 930 7th Ave, Kirkland, WA 98033.

3.      On information and belief, Landmark Technology is a Delaware limited liability company having its principal place of business at 329 Laurel Street, San Diego, California 92102.

4.      On information and belief, PanIP, LLC was the predecessor to Landmark Technology.

## **JURISDICTION AND VENUE**

5.      This Court has original and exclusive subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1338 because the Complaint states claims arising under an Act of Congress relating to patents, 35 U.S.C. § 271.

6.      This Complaint also arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* based on Defendant's accusations towards Plaintiff for patent infringement and its pattern of actual litigation concerning United States Patent No. 6,289,319, thereby giving rise to an actual case or controversy under 28 U.S.C. §§ 2201 and 2202.

7.      This Court has personal jurisdiction over Landmark Technology. Upon information and belief, Landmark Technology conducts substantial business in this judicial District, including regularly doing or soliciting business, engaging in other persistent courses of conduct, suing other companies in this District on the '319 Patent, and deriving substantial revenue from individuals and entities in Washington. Landmark Technology previously systematically availed itself of the Washington federal district courts as a forum for asserting

COMPLAINT - 2
Case No.

**FOSTER PEPPER PLLC**
**1111 THIRD AVENUE, SUITE 3000**
**SEATTLE, WASHINGTON 98101-3292**
**PHONE (206) 447-4400 FAX (206) 447-9700**

alleged infringement of the '319 Patent. *See e.g. Landmark Technology, LLC v. Jones Soda Co. et al.*, WAWD-2-17-cv-00978 (Filed June 28, 2017).

8.      Landmark Technology purposefully and repeatedly directed its activities at residents of Washington. On information and belief, Landmark Technology sent letters to numerous other companies, including numerous other companies based in Washington, asserting infringement of the '319 Patent and demanding payment of money. Thus, Landmark Technology has sufficient minimum contacts with the State of Washington to satisfy the Washington long-arm statute (RCW 4.28.185) and Constitutional due process requirements because Landmark Technology regularly conducts business activities in Washington.

9.      Venue is proper in the Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## FACTUAL BACKGROUND

### General Background

10.      Upon information and belief, Landmark Technology does not make, use or sell any products or services of its own, but is solely in the business of patent licensing through the threat of litigation – this pattern of behavior is indicative of entities commonly referred to as a "patent trolls."

11.      Upon information and belief, Landmark Technology's sole business model and activity involves sending letters accusing others of patent infringement and threatening litigation.

12.      Landmark Technology consistently follows through on its threats against companies who refuse to pay the license fee sought by Landmark Technology's demand letters, as evidenced by the mountain of litigation stemming from the '319 Patent alone. *See* e.g. *Landmark Technology, LLC v. Jones Soda Co. et al.*, WAWD-2-17-cv-00978 (Filed June 28, 2017); *Landmark Technology, LLC v. Launchpad, Inc.*, CASD-3-17-cv-00892 (Filed May 3, 2017); *Landmark Technology, LLC v. GourmetGiftBaskets.com, Inc.*, CASD-3-17-cv-00851 (Filed April 26, 2017).

COMPLAINT - 3
Case No.

13.     On information and belief, Landmark Technology has filed over one hundred lawsuits against various companies asserting infringement of the '319 Patent and patents related to the '319 Patent.

14.     Landmark Technology swiftly settles all lawsuits; none of the lawsuits involving the '319 Patent made it as far as claim construction.

15.     A review of the record shows that very few Defendants ever file an Answer. Most cases appear to be resolved prior to the Answer filing deadline.

16.     This same pattern holds true for any time Landmark Technology is sued for a Declaratory Judgment or has its patent challenged at the Patent Office.

17.     Landmark Technology appears to systematically and quickly settle litigation prior to any potentially damaging rulings, thereby preserving its ability to extract license fees from other companies moving forward.

18.     Upon information and belief, these settlements are made quickly and confidentially to prevent future targets from learning of the baselessness of Landmark Technology's claims and to prevent any party from pursuing to judgment the invalidity of the '319 Patent.

19.     Similar fact patterns to the one present here, where a party's business model involves filing numerous patent infringement suits, and leveraging the high cost of litigation to extract settlements, and where the patentee has no intention of testing the merits of their claims, especially under 35 U.S.C. § 101, have been found "exceptional" and support an award of fees and costs, especially under the lower standard for awarding fees articulated in *Octane Fitness,* 134 S. Ct. 1749 (2014). *SFA Sys., LLC v. Newegg Inc., 793 F.3d 1344, 1350 (Fed. Cir. 2015)* (finding that a pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under 35 U.S.C. § 285.); *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.,*

COMPLAINT - 4
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400   FAX (206) 447-9700

858 F.3d 1383, 1390 (Fed. Cir. 2017) (finding that patent owners pattern of litigation practices and willful ignorance of invalidating circumstances could warrant an award of fees under 35 U.S.C. § 285); *Shipping and Transit LLC v. Hall Enterprises, Inc,* 2-16-cv-06535 (C.D. Cal., 2017) (finding pattern of filing serial litigation and voluntarily dismissing cases prior to judgment on validity justifies award of attorney fees under 35 U.S.C. § 285).

20.     Landmark Technology's tactic of filing serial litigation and voluntarily dismissing cases prior to judgment on validity, combined with the baseless nature of its demands, renders this case exceptional so as to justify award of attorney fees under 35 U.S.C. § 285.

### Landmark Technology's Threatening Letters

21.     On or about June 16, 2017, Landmark Technology sent a letter to Andrew Walsh, of Paint Sundries, asserting that Paint Sundries infringes the '319 Patent, claiming that "specific functionalities implemented by Paint Sundries using their servers and devices interfaced to Paint Sundries' web servers constitutes use of the technology taught within the meaning of Claim 1 of the '319 patent." A true and correct copy of the letter as received is attached as Exhibit A.

22.     Prior to the letter, Plaintiff had never heard of Landmark Technology, or the '319 Patent.

23.     The letter does not include an element by element, or any other type of analysis or description of Paint Sundries' services believed to infringe, and instead simply includes a link to Paint Sundries' website login page, http://www.paintsundries.com/Login.

24.     The letter concludes by offering Paint Sundries a "non-exclusive license to its patent portfolio, including the '391 patent, for $65,000." This offer, Landmark Technology is quick to point out, will be withdrawn in the event of litigation, in order to discourage Paint Sundries from defending itself. The letter requested a response within 15 days.

25.     Nowhere in the letter did Landmark Technology indicate that the offer was negotiable. Upon information and belief, this tactic is designed to extract a payment from letter

COMPLAINT - 5
Case No.

recipients, knowing that the payment would be significantly less expensive than defending against even a questionable patent infringement case in court.

26.     The letter fails to indicate whether Landmark Technology is the owner or assignee of the '319 Patent. A review of the '319 Patent does not indicate any assignments have been made.

27.     The letter also makes a number of misleading statements regarding the prominence of the '319 Patent.

**The '319 Patent**

28.     The original patent application to which the '319 Patent claims priority, was filed by Lawrence B. Lockwood ("Lockwood") over 33 years ago, on May 5, 1984. A "continuation-in-part" patent application was filed in 1986, based on the original patent application filed in 1984.

29.     This continuation-in-part patent application was rejected by the U.S. Patent and Trademark Office in 1988 and subsequently abandoned.

30.     Between 1988 and 1993, Lockwood filed four additional continuation patent applications stemming from the eventually rejected and abandoned continuation-in-part.

31.     Each of the continuation-in-part applications were also rejected by the U.S. Patent and Trademark Office, and subsequently abandoned.

32.     On November 30, 1994, Lockwood filed another patent application, U.S. App. No. 08/347,270, ("'270 Application") which used the same specification as the previously rejected and abandoned applications.

33.     The '270 Application was titled "Automatic Loan Processing Terminal System."

34.     The '270 Application was rejected numerous times by the Examiner during prosecution.

35.     The Examiner initially rejected the '270 Application under 35 U.S.C. § 101 as being directed to a method of doing business and not containing any patentable subject matter;

COMPLAINT - 6
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

1  under 35 U.S.C. § 112 as being indefinite, non-enabling, and lacking specification support; and

2  under 35 U.S.C. § 103 as being just an obvious combination of prior technology or "prior art."

3      36.    On October 17, 1995, Lockwood filed an amendment to the '270 Application

4  changing the title of the application to "Automatic Business and Financial Transaction

5  Processing System," deleting certain claims and adding other claims in response to the

6  Examiner's rejection.

7      37.    In response to these amendments, the Examiner again rejected the application

8  under 35 U.S.C. § 112; and under 35 U.S.C. § 103 for being unpatentable due to being an

9  obvious combination of prior art.

10      38.    Lockwood appealed the Examiner's final rejection to the USPTO's Board of

11  Patent Appeals and Interferences. During the appeal, Lockwood argued that the claims required

12  "forward chaining" in order to overcome various combinations of prior art. Lockwood further

13  argued that his invention had the ability to dynamically interact with a user at the terminal.

14      39.    On September 27, 2000, the Board reversed the examiner's rejection at least

15  partially because "the examiner has failed to establish a *prima facie* case of obviousness with

16  regard to claimed subject matter." BPAI Decision on Appeal, Appeal No. 1997-2678, Sep. 27,

17  2000, pp. 7-8.

18      40.    On September 11, 2001, the '319 Patent, entitled "Automatic Business and

19  Financial Transaction Processing System" issued.

20      41.    The '319 Patent is ostensibly directed to an automatic data processing system for

21  processing business and financial transactions between entities from remote sites.

22      42.    Post issuance, the '319 Patent has been through two *Ex Parte* Reexaminations.

23  Certificates for the *Ex Parte* Reexaminations Issued on July 17, 2007 and January 9, 2013,

24  respectively.

25      43.    During the first *Ex Parte* Reexamination, the Examiner rejected all of the '319

26  Patent's claims, forcing Lockwood to amend and add 22 new dependent claims. In view of the

COMPLAINT - 7
Case No.

1   narrower claims, the Examiner eventually relented and a Reexamination certificate issued on

2   July 17, 2007.

3         44.    On September 14, 2012, a second request was filed for *Ex Parte* Reexamination

4   of certain claims of the '319 Patent (US Control No. 90/006,623). During this second

5   reexamination, the Examiner performed an extensive claim construction analysis of a critical

6   element of Claim 1. This analysis made it clear that the confirmation of the '319 Patent depended

7   upon a narrow interpretation of the patent, such that any infringement would require the use of

8   "forward chaining."

9         45.    Lockwood also argued during prosecution that the '319 Patent claims required

10  "forward chaining."

11        46.    Because the '319 Patent claims require "forward chaining," it cannot claim

12  priority to May 24, 1984, as that original ancestral application fails to disclose or teach forward

13  chaining. Instead, the '319 Patent can only claim priority to, at the very earliest, the CIP filed on

14  January 24, 1986.

15        47.    This same priority issue was identified in a recent Covered Business Method

16  ("CBM") review of a patent related to the '319 Patent. That proceeding also ended in a

17  confidential settlement, but only after the Board instituted a trial while finding it was likely that

18  the prior art invalidated that patent. The Board never reached the merits of the priority date issue.

19  *See* CBM2014-00025 Petition for CBM of U.S. Patent No. 7,010,508.

20        48.    The '319 Patent contains a single independent claim, which reads as follows:

21        1. An automatic data processing system for processing business and financial
    transactions between entities from remote sites which comprises:

22

23        a central processor programmed and connected to process a variety of inquiries
    and orders transmitted from said remote sites;

24

25        said central processor including:

26        **means for** receiving information about said transactions from said remote sites;

COMPLAINT - 8
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

**means for** retrievably storing said information;

at least one terminal at each of said remote sites including a data processor and operational sequencing lists of program instructions;

**means for** remotely linking said terminal to said central processor and for transmitting data back and forth between said central processor and said terminal;

said terminal further comprising **means for** dispensing information and services for at least one of said entities including:

a video screen;

**means for** holding operational data including programing, informing, and inquiring sequences of data;

**means for** manually entering information;

**means for** storing information, inquiries and orders for said transactions entered by one of said entities via said **means for** manually entering information, and data received through and from said central processor;

on-line **means for** transmitting said information, inquiries, and orders to said central processor;

on-line **means for** receiving data comprising operator-selected information and orders from said central processor via said linking means;

**means for** outputting said informing and inquiring sequences on said video screen in accordance with preset routines and in response to data entered through said **means for** entering information;

**means for** controlling said **means for** storing, **means for** outputting, and **means for** transmitting, including **means for** fetching additional inquiring sequences in response to a plurality of said data entered through said **means for** entering and in response to information received from said central processor;

said informing sequences including directions for operating said terminal, and for presenting interrelated segments of said operational data describing a plurality of transaction operations;

said programming sequences including **means for** interactively controlling the operation of said video screen, data receiving and transmitting **means**; and for selectively retrieving said data from said **means for** storing;

COMPLAINT - 9
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700

said **means for** storing comprising **means for** retaining said operational sequencing list and **means** responsive to the status of the various **means for** controlling their operation;

said central processor further including:

**means responsive to** data received from one of said terminals for immediately transmitting selected stored information to said terminal; and

**means responsive to** an order received from a terminal for updating data in said **means for** storing;

whereby said system can be used by said entities, each using one of said terminals to exchange information, and to respond to inquiries and orders instantaneously and over a period of time.

'319 Patent, Claim 1 (emphasis added).

49.    In order to infringe the claims of the '319 Patent, irrespective of validity, one must at the very least practice *every* limitation of Claim 1.

50.    Further, the accused system must include *every* limitation as argued by Lockwood in prosecution.

51.    Further still, the accused system must include *every* limitation as construed by Landmark in other litigation. For example, in prior litigation Landmark Technology has argued for a narrow claim scope to forestall an invalidity ruling. *Tatcha LLC v. Landmark Technology, LLC.*, 3:16-cv-04831 (N.D. CA 2017)

52.    Finally, the claims contain a large number of means plus function limitations. Under 35 U.S.C. § 112(f)/(6) the claims are limited to the function described in the specification. The sparse specification fails to provide the required structure of the various "means." This is exacerbated by the narrow and specific scope that Landmark Technology repeatedly described the '319 Patent to have; a specificity not found anywhere in the specification.

COMPLAINT - 10
Case No.

**Paint Sundries Does Not Infringe any Valid and Enforceable Claim of the '319 Patent**

53.    Paint Sundries does not infringe Claim 1, or any other valid claim of the '319 Patent, for at least the following reasons: Claim 1 is invalid under 35 U.S.C. § 101 for claiming an abstract idea; and/or, Claim 1 is invalid under 35 U.S.C. § 112.

54.    Further, Paint Sundries' services or website do not practice *every* limitation of Claim 1.

55.    Upon information and belief, Landmark Technology failed to undergo any type of infringement analysis prior to sending its demand letter.

56.    As noted previously, the letter does not include an element by element description, or any other type of analysis of Paint Sundries' product, services, or technology believed to infringe and instead simply includes a link to Paint Sundries' website login page, http://www.paintsundries.com/Login.

57.    In response to the letter, Plaintiff undertook a review of its records to ascertain whether Landmark Technology used its system in a manner which would indicate any type of due diligence.

58.    After conducting an initial review, Plaintiff concluded that Landmark Technology had not even bothered to attempt to create a login credential and therefore never actually accessed Plaintiff's product, services, or technology prior to sending the demand letter.

59.    Upon information and belief, Landmark Technology never logged in as a real (or even pretend), actual, or potential customer to Paint Sundries' website.

60.    Upon information and belief, Landmark Technology did not perform any due diligence of Paint Sundries' systems or services prior to writing to Paint Sundries threatening legal action and demanding payment of $65,000.

COMPLAINT - 11
Case No.

## COUNT I – DECLARATION OF INVALIDITY OF U.S. PATENT 6,289,319

61.     Paint Sundries restates and incorporates by reference the allegations in paragraphs 1 through 60 of this Complaint as if fully set forth herein.

62.     Landmark Technology claims to have exclusive rights to the '391 Patent.

63.     Landmark Technology demanded that Paint Sundries take a license to the '319 Patent within 15 days or be sued.

64.     Landmark Technology is in the business of threatening litigation and following through on that threat specifically with respect to the '319 Patent. A review of Landmark Technology's record demonstrates a consistent and readily apparent pattern of litigation, creating a reasonable fear that Paint Sundries was Landmark Technology's next target.

65.     Landmark systematically ends disputes prior to any judgment against the '319 Patent can be entered.

66.     Without a judgment, Landmark is free to continue aggressively enforcing its invalid patent.

67.     The claims of the '319 Patent are invalid under any one of at least 35 U.S.C. §§ 101, 102, 103, and 112.

68.     The claims of the '319 Patent do not constitute patentable subject matter pursuant to 35 U.S.C. § 101, and therefore are an invalid or ineligible patent on an abstract idea. The '319 Patent claims the abstract idea of automated data processing of business transactions. Nothing in the claims, "transform the nature of the claims" into patent eligible subject matter. *Mayo Collaborative Services v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012). Furthermore, "[t]he mere visitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

69.     Additionally, the '319 Patent is invalid as anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103. Prior art that in combination or alone renders the '319 Patent anticipated and/or obvious includes, but is not necessarily limited to:

COMPLAINT - 12
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

- "A Model of an Audit Judgment in the Form of an Expert System," Dungan, Chris W., Ph. D. dissertation, University of Illinois, published May 23, 1983;

- An Expert System for the Evaluation of Abnormal Human Locomotion Arising from Stroke," James M. Dzierzanowski, et al., IEEE TRANSACTIONS ON BIOMEDICAL ENGINEERING, VOL. BME-32, NO. 11, published NOVEMBER 1985;

- William van Melle, et al., published October 1981;

- Harold E. Johnson, et al., Journal of Forth Application and Research, Vol. 1, No. 1, pp. 7-16, published Sept. 1983;

- Ronald D. Gordon, Globecom '82, IEEE Global Telecommunications Conference, Conference Record Vol. 3 of 3, Miami, Nov. 29 to Dec. 2, 1982;

- U.S. Patent No. 4,359,631 (Lockwood);

- U.S. Patent No. 4,567,359 (Lockwood);

- U.S. Patent No. 4,994,964 (Wolfberg); and

- U.S. Patent No. 6,105,007 (Norris).

70. The claims of the '319 Patent are also invalid because the specification fails to provide any structure for the numerous means plus function elements recited in the claims.

71. Further, the claims of the '319 Patent are not entitled to the 1984 priority date.

72. Landmark Technology systematically ends litigation involving the '319 Patent prior to a final judgment on its validity thereby artfully preserving an invalid patent for future assertion.

73. This tactic of filing serial litigation and voluntarily dismissing cases prior to judgment on validity renders this case exceptional so as to justify award of attorney fees under 35 U.S.C. § 285. *SFA Sys., LLC v. Newegg Inc.,* 793 F.3d 1344, 1350 (Fed. Cir. 2015) (finding that a pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's

COMPLAINT - 13
Case No.

1   claims, is relevant to a district court's exceptional case determination under 35 U.S.C. § 285);

2   *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc*., 858 F.3d 1383,

3   1390 (Fed. Cir. 2017) (finding that patent owners pattern of litigation practices and willful

4   ignorance of invalidating circumstances could warrant an award of fees under 35 U.S.C. § 285);

5   and *Shipping and Transit LLC v. Hall Enterprises, Inc,* 2-16-cv-06535 (C.D. Cal., 2017) (finding

6   pattern of filing serial litigation and voluntarily dismissing cases prior to judgment on validity

7   justifies award of attorney fees under 35 U.S.C. § 285).

8       74.    Based on Landmark Technology's letter, the imminent threat of litigation for

9   patent infringement, a consistent pattern of carrying out its threat, and other characteristics typical

10  of a patent troll, as well as Paint Sundries' denial of infringement, an actual case or controversy

11  exists as to whether Paint Sundries infringes any valid claim of the '319 Patent.

12      75.    Paint Sundries is entitled to a declaration that the claims of the '319 Patent are

13  invalid.

14  **COUNT II - DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT 6,289,319**

15      76.    Paint Sundries restates and incorporates by reference the allegations in paragraphs

16  1 through 75 of this Complaint as if fully set forth herein.

17      77.    Landmark Technology claims to have exclusive rights to the '391 Patent.

18      78.    Landmark Technology has demanded that Paint Sundries take a license to the

19  '319 Patent within 15 days or be sued.

20      79.    Landmark Technology is in the business of threatening litigation and following

21  through on that threat specifically with respect to the '319 Patent. A review of Landmark

22  Technology's record demonstrates a consistent and readily apparent pattern of litigation.

23      80.    Landmark Technology failed to conduct any pre-demand due diligence prior to

24  demanding $65,000 from Paint Sundries.

25

26

COMPLAINT - 14
Case No.

FOSTER PEPPER **PLLC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

81.     Landmark Technology has made numerous limiting admissions regarding the scope of the claims of the '319 Patent during its prosecution and in subsequent litigation proceedings.

82.     De minimis pre-demand research establishes that under the plain language of the claim, and especially under the much narrower reading argued by the inventor and Landmark Technology, Paint Sundries' system, product, and technology do not infringe any valid and enforceable claim of the '319 Patent.

83.     Base on Landmark Technology's history of vexatious litigation, Landmark Technology never intends to establish the merits of its infringement accusation. This is grounds for fees under 35 U.S.C. § 285 as an exceptional case. *See* case law supra at 69.

84.     Paint Sundries has not infringed and does not infringe any valid and enforceable claim of the '319 Patent, whether literally or under the doctrine of equivalents.

85.     Additionally, Paint Sundries is not liable for any induced, contributory, divided, or other indirect infringement of any valid and enforceable claim of the '319 Patent. Neither Paint Sundries, nor its customers who access its website, nor anyone associated with Paint Sundries, utilize *every* element of any claim in the '319 Patent as is required for infringement.

86.     Based on Landmark Technology's letter and accusation of patent infringement, especially in light of its pattern of litigation, and Paint Sundries' denial of infringement, a substantial, immediate, and real controversy exists between Paint Sundries and Landmark Technology regarding whether Paint Sundries directly or indirectly infringes or has infringed the '319 Patent.  A judicial declaration is necessary to determine the parties' respective rights regarding the '319 Patent.

87.     Paint Sundries seeks a judgment declaring that Paint Sundries does not directly or indirectly infringe any claim of the '319 Patent.

COMPLAINT - 15
Case No.

1
2

## COUNT III – FEDERAL UNFAIR AND DECEPTIVE TRADE PRACTICES
## 15 U.S.C. § 45(A)(1).

88.     Paint Sundries restates and incorporates by reference the allegation in paragraphs 1 through 87 as if fully stated herein.

89.     Defendant's infringement allegations are objectively baseless given that: the claims are invalid under 35 U.S.C. §§ 101, 103, and 112.

90.     Landmark Technology failed to conduct any analysis comparing the claims in the patent to Paint Sundries' product, services, or technology and instead points to a generic login page, which, based on Landmark Technology's prior statements regarding the scope of the claims, cannot infringe.

91.     Defendant's infringement allegations are objectively baseless given a lack of actual allegations related to the specific areas in which the Paint Sundries' product, services, or technology infringes.

92.     Defendant's infringement allegations are objectively baseless given the deceptive and misleading information regarding the enforceability and importance of the '319 Patent as a "pioneer patent."

93.     Defendant's infringement allegations are objectively baseless given the deceptive and misleading information regarding the priority date of the '319 Patent.

94.     Defendant's infringement allegations are objectively baseless given that Paint Sundries does not practice *every* limitation of the '319 Patent.

95.     Landmark Technology systematically ends litigation involving the '319 Patent prior to a final judgment on its validity thereby artfully preserving an invalid patent.

96.     Defendant's actions constitute bad-faith patent litigation because Defendant knows, or should know, that the patent is invalid (or would be declared invalid if Defendant did not settle any dispute prior to resolution), and not infringed.

COMPLAINT - 16
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

97.     By knowingly threatening litigation in bad faith, Defendant committed unfair methods unfair or deceptive acts or practices in or affecting commerce.

98.     Paint Sundries seeks an injunction and such other equitable relief as deemed appropriate.

## COUNT IV – DECLARATORY JUDGMENT THAT LANDMARK TECHNOLOGY HAS FAILED TO COMPLY WITH 35 U.S.C. § 287

99.     Pain Sundries restates and incorporates by reference the allegation in paragraphs 1 through 98 of this Complaint as if fully stated herein.

100.    Landmark Technology contends it has licensed its patents, including the '319 Patent, to over 150 companies across various industries. Exhibit A at 1.

101.    Pursuant to 35 U.S.C. § 287(a), a patentee must mark goods covered by the patent with the patent number.

102.    Under 35 U.S.C. § 287(a), because of Landmark Technology's failure to mark, "no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice."

103.    Upon information and belief, Landmark Technology has not marked its products, or caused any licensee to mark their products with the '319 Patent number.

104.    Based on Landmark Technology's letter and accusation of patent infringement, especially in light of its pattern of litigation, and Paint Sundries' denial of infringement, a substantial, immediate, and real controversy exists between Paint Sundries and Landmark Technology.

105.    Paint Sundries is entitled to a declaration that Landmark Technology may not recover damages prior to June 16, 2017.

COMPLAINT - 17
Case No.

## COUNT V – DECLARATION THAT LANDMARK TECHNOLOGY LACKS THE RIGHT TO ASSERT THE '319 PATENT

106.    Pain Sundries restates and incorporates by reference the allegation in paragraphs 1 through 105 of this Complaint as if fully stated herein.

107.    The demand letter alleges that Landmark Technology "has exclusive rights" to various patents and infers a right to sublicense the '319 Patent. ("Landmark is currently offering Paint Sundries a non-exclusive license to its patent portfolio, including the '319 Patent").

108.    Landmark has not asserted that it owns the '319 Patent or has the exclusive right to enforce the '319 Patent.

109.    USPTO records do not establish that Landmark Technology has been assigned the '319 Patent, and no assignment has been recorded.

110.    The '319 Patent is currently listed as owned by Lawrence B. Lockwood. Exhibit B.

111.    Landmark Technology does not own and cannot assert the '319 Patent and therefore cannot enforce any rights in the '319 Patent.

112.    Based on Landmark Technology's letter and accusation of patent infringement, especially in light of its pattern of litigation, and Paint Sundries' denial of infringement, a substantial, immediate, and real controversy exists between Paint Sundries and Landmark Technology.

113.    A judicial declaration that Landmark Technology lacks the right to assert the '319 Patent is necessary and appropriate so that Paint Sundries may ascertain its rights regarding the '319 Patent and to prevent further injury to Paint Sundries.

## COUNT VI – BAD FAITH ASSERTIONS OF PATENT INFRINGEMENT, RCW 19.86 *ET SEQ.* AND 19.350.020

114.    Paint Sundries restates and incorporates by references the allegations in paragraphs 1 through 113 of this Complaint as if fully stated herein.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400   FAX (206) 447-9700

115.    Defendant demands the payment of $65,000 without providing any copies of the '319 Patent.

116.    Defendant demands the payment of $65,000 without providing the name and address of the patent owner.

117.    Defendant demands the payment of $65,000 without providing whether or not Landmark Technology owns or has the exclusive right to the '319 Patent.

118.    Defendant demands the payment of $65,000 without providing factual allegations related to the specific areas in which the Paint Sundries' product, services, or technology infringes.

119.    Defendant demands the payment of $65,000 without providing evidence that Defendant conducted any analysis comparing the claims in the patent to Paint Sundries' product, services, or technology.

120.    Defendant demands the payment of $65,000 through deceptive and misleading information regarding the enforceability of a patent that is invalid under 35 U.S.C. §§ 101, 102, 103 and 112.

121.    Defendant's infringement allegations are objectively baseless given that the claims are invalid under 35 U.S.C. §§ 101, 103, and 112 and given that Paint Sundries' product, services, and technology do not infringe Claim 1.

122.    Defendant demands the payment of $65,000 through deceptive and misleading information regarding the enforceability and importance of the '319 Patent as a "pioneer patent."

123.    Defendant demands the payment of $65,000 through deceptive and misleading information regarding the priority date of the '319 Patent.

124.    Defendant's actions all constitute bad faith assertions of patent infringement under RCW 19.350.020, and violations of RCW 19.86 *et seq*. including, but not limited to 19.86.020, -.030, -.040, -.050, and -.093.

COMPLAINT - 19
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

125.    The provisions of RCW 19.350.020 are actionable under RCW 19.86.020. *See* RCW 19.86.093; 19.350.005.

126.    Paint Sundries seeks damages, treble damages, and attorney fees pursuant to RCW 19.86.090.

## JURY DEMAND

127.    Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Paint Sundries Solutions, Inc. prays for the following relief:

A.    A declaration that Paint Sundries' services, systems, and practices do not infringe any valid and enforceable claim of the '319 Patent;

B.    A declaration that the '319 Patent is invalid for failure to comply with the requirements of 35 U.S.C., including at least §§ 101 and/or 112;

C.    Declaring Paint Sundries the prevailing party and this case as exceptional, and awarding Paint Sundries its reasonable attorney fees, pursuant to 35 U.S.C. § 285. *See* case law supra;

D.    Declaring Landmark Technology's conduct as unlawful, unfair, and deceptive trade practices;

E.    Awarding Paint Sundries all damages caused by Defendant's unlawful acts, including punitive damages and pre-and post-judgment interest, as provided by law;

F.    Awarding Paint Sundries damages, treble damages, and attorney fees pursuant to Washington State Abusive Patent Litigation statute RCW 19.86.090;

G.    Ordering Defendant to pay all fees, expenses and costs associated with this action; and

H.    Awarding such other and further relief as this Court deems just and proper.

COMPLAINT - 20
Case No.

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

1    DATED this 14th day of July, 2017.

2

3                                    By: /s/ Benjamin Hodges
                                     By: /s/ Richard T. Black
4                                    By: /s/ Kevin Ormiston
                                     Benjamin Hodges, WSBA No. 49301
5                                    Richard T. Black, WSBA No. 20899
                                     Kevin Ormiston, WSBA No. 49835
6                                    FOSTER PEPPER PLLC
                                     1111 Third Avenue, Suite 3000
7                                    Seattle, Washington 98101-3292
                                     Telephone: (206) 447-4400
8                                    Facsimile: (206) 447-9700
                                     Email: ben.hodges@foster.com;
9                                    rich.black@foster.com;
                                     kevin.ormiston@foster.com
10
                                     Attorneys for Plaintiff
11                                   Paint Sundries Solutions, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT - 21
Case No.

# EXHIBIT A



John A. Lee
Banie & Ishimoto LLP
3705 Haven Ave. #137
Menlo Park, CA 94025
Phone: 650-241-2774
Email: jlee@banishlaw.com

**VIA U.S. MAIL**

June 16, 2017

Mr. Andrew Walsh
Paint Sundries Solutions, Inc.
970 7th Ave.
Kirkland, WA 98033

      Re:    Infringement of Landmark Technology, LLC's Patent Rights

Dear Mr. Walsh:

     We are intellectual property counsel for Landmark Technology, LLC ("Landmark"). Landmark has exclusive rights to patents covering certain special-purpose computer, communication and network technologies relating to Internet searching, e-commerce, electronic bill pay, on-line banking services, business-to-'business transactions, multimedia data processing networks and mobile technologies. Landmark's widely regarded patented technology covers, among other things, special-purpose hardware and software systems supporting key transaction processes and features used in many electronic commerce systems, including structures which exchange business data amongst trading partners.

     Landmark has licensed its patents to over 150 companies across various industries. Landmark's patents rank extremely high in patent citing activity and have been cited almost 2,000 times by the USPTO whereas the average patent has only five citations during its lifetime. Highly cited patents are generally known to be of greater technical importance, and even fewer rise to the level of "pioneer patents" achieved by the Landmark patents.

     Landmark believes that Paint Sundries Solutions, Inc.("Paint Sundries Solutions") data processing systems, particularly https://www.paintsundries.com/Login through practices U.S. Patent No. 6,289,319 ("'319 Patent"). The '319 Patent has been twice examined and held valid by the USPTO. On May 5, 2003, a request for *ex parte* Reexamination was filed, and on July 17, 2007, the USPTO confirmed the validity of all the claims without amendment, and also found 21 newly asserted claims patentable. On September 14, 2012, another request for *ex parte* Reexamination was filed, and on January 9, 2013, the

USPTO again confirmed the validity of all of the claims without cancelling any claims or requiring any amendments.

You will find that the '319 Patent teaches and claims automatic data processing systems for processing business and financial transactions between entities from remote sites. This includes data processing systems wherein a central processor acts on inquiries and orders from terminals [as do Paint Sundries Solutions's servers], communicates with terminals which use program instructions and act as the user interface [as do those devices interfaced to Paint Sundries Solutions's web servers in communication with Paint Sundries Solutions's servers], sequences are retrieved in response to data entered [as seen in devices interfaced to Paint Sundries Solutions's web servers], and data is updated in central processor storage [as per the functionality of Paint Sundries Solutions's web servers]. For example, the specific functionalities implemented by Paint Sundries Solutions using their servers and devices interfaced to Paint Sundries Solutions's web servers constitutes use of the technology taught within the meaning of Claim 1 of the '319 patent.

Landmark is currently offering Paint Sundries Solutions a non-exclusive license to its patent portfolio, including the '319 patent, for $65,000. This offer represents a substantial discount to the historic licensing price of Landmark's portfolio, and will not be available in the event of litigation.

We appreciate your attention to this matter and request a response within 15 days of this letter. Please contact me at the phone or email above, or contact my colleague, Jennifer Ishimoto, at ishimoto@banishlaw.com or (650) 241-2773.

Very truly yours,

John A. Lee
Partner
BANIE & ISHIMOTO LLP

# EXHIBIT B

Case 2:17-cv-00978-JS    Document 1-1  Filed 07/17/17  Page 1 of 48

US006289319B1

(12) **United States Patent**

Lockwood

(10) Patent No.: **US 6,289,319 B1**
(45) Date of Patent: **Sep. 11, 2001**

(54) **AUTOMATIC BUSINESS AND FINANCIAL TRANSACTION PROCESSING SYSTEM**

(76) Inventor: **Lawrence B. Lockwood**, 5935 Folsom Dr., La Jolla, CA (US) 92037

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **08/347,270**

(22) Filed: **Nov. 30, 1994**

**Related U.S. Application Data**

(63) Continuation of application No. 08/096,610, filed on Jul. 23, 1993, now abandoned, and a continuation of application No. 07/752,026, filed on Aug. 29, 1991, now abandoned, and a continuation of application No. 07/168,856, filed on Mar. 16, 1988, now abandoned, and a continuation of application No. 06/822,115, filed on Jan. 24, 1986, now abandoned, which is a continuation-in-part of application No. 06/613, 525, filed on May 24, 1984, now Pat. No. 4,567,359.

(51) Int. Cl.⁷ ........................................ G06F 17/60
(52) U.S. Cl. ........................................ 705/35
(58) Field of Search .................... 364/408, 406; 235/381, 380, 379; 705/35, 38, 4

(56) **References Cited**

U.S. PATENT DOCUMENTS

4,333,152 * 6/1982 Best ........................ 395/152
4,359,631 * 11/1982 Lockwood et al. .......... 235/381
4,553,206 * 11/1985 Smutek et al. ............. 395/275
5,146,404 * 9/1992 Calloway et al. .......... 364/401

OTHER PUBLICATIONS

Young, G, "Computer firm to help buyer, shop for loan", Washington Post, Virginia, Real Estate Section, Apr. 9, 1984 (Nexis ™ Excerpts).*

* cited by examiner

Primary Examiner—Robert Beausoleil
Assistant Examiner—X. Chung-Trans
(74) Attorney, Agent, or Firm—Henri J. A. Charmasson; John D. Buchaca

(57) **ABSTRACT**

A system for filing applications with an institution from a plurality of remote sites, and for automatically processing said applications in response to each applicant's credit rating obtained from a credit reporting service comprising a series of self-service terminals remotely linked via a telephone line to a first computer at the institution and to a second computer at the credit reporting service headquarters. Each remote terminal comprises a video screen and a video memory which holds image-and-sound-generating information arranged to simulate the aspect and speech of an application loan officer on the video screen. The simulated loan officer is used to acquire loan request data from the applicant by guiding him through an interactive sequence of inquiries and answers. The terminal is programmed to acquire credit rating data relating to the applicant from the credit rating service, and to use the data to compute the credit worthiness of the applicant and the amount which may be loaned to him. The approved loan information is then transmitted to the first computer for further processing by the financial institution.

**6 Claims, 5 Drawing Sheets**





FIG. 1



FIG. 2



FIG. 3



FIG. 4

Case 2:17-cv-00978-JSZ Document 122 Filed 07/14/17 Page 35 of 45



FIG. 5

US 6,289,319 B1

1

# AUTOMATIC BUSINESS AND FINANCIAL TRANSACTION PROCESSING SYSTEM

## PRIOR APPLICATIONS

This is a continuation application of application Ser. No. 08/096,610 filed Jul. 23, 1993 now abandoned, a continuation application of application Ser. No. 07/752,026 filed Aug. 29, 1991 now abandoned, a continuation of application Ser. No. 07/168,856, filed Mar. 16, 1988 now abandoned, a continuation of application Ser. No. 06/822,115, filed Jan. 24, 1986 now abandoned, which is a continuation-in-part of application Ser. No. 06/613,525 filed May 24, 1984, now U.S. Pat. No. 4,567,359, issued Jan. 28, 1986.

## BACKGROUND OF THE INVENTION

The present invention relates to automatic self-operated terminals, vending machines, and interactive data processing networks. More specifically, this invention relates to terminals used by banking institutions to make their services available at all hours of the day from various remote locations.

Loan processing has traditionally been a labor-intensive business which represents the major activity of banks and other financial institutions. In the processing of a loan application, numerous forms have to be filled-out, loan officers have to explain payment schedules and generally guide the applicant through the loan application process. The financial institution then has to process the application and either telephone, mail, or communicate acceptance or rejection of the loan in person to the applicant. The complexity of the process has so far prevented the application of automatic terminals to this important part of financial institution activities. Automatic vending machines and self-service terminals have evolved to a high degree of sophistication as disclosed in U.S. Pat. No. 4,300,040 Gould, et al. and U.S. Pat. No. 4,359,631 Lockwood, et al. Yet, this high degree of sophistication has not been put to use in the more complex types of goods and services distribution which requires a great deal of interaction between individuals and institutions.

## SUMMARY OF THE INVENTION

The principal object of this invention is to provide an economical means for screening loan applications. When one considers that up to 75% of persons applying for loans fail to meet the financial institution qualification criteria, one realizes that a great deal of labor is required by loan officers before a qualified applicant presents himself.

Another object of the invention is to standardize the reporting and interpretation of credit ratings and their application to loan application processing.

A further object of the invention is to reduce the amount of paperwork and processing time required by each loan application.

It is also an object of the invention to offer a more personal way to apply for credit. Many applicants who would not hesitate to use a mechanical device to place their inquiry are reluctant to inquire about loans requiring face-to-face interaction with a loan officer.

These and other objects are achieved by means of a system that ties together financial institution data processing, the computer services of a credit reporting bureau, and a plurality of remote terminals. Each remote terminal displays the live image of a fictitious loan officer who helps the applicant through an interactive series of

2

questions and answers designed to solicit from the applicant all the information necessary to process his loan application. The terminal can acquire credit rating information about the applicant from the credit reporting bureau and make a decision based on all the information gathered about the credit worthiness of the applicant and the amount of loan to which he is entitled. The loan amount is then communicated to the applicant and to the financial institution for further processing of the loan.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a general block diagram of the system for automatically processing loan applications;

FIG. 2 is a block diagram showing the major components of the terminal; and

FIGS. 3 to 5 are detailed flow diagrams of the system operation.

## DESCRIPTION OF THE PREFERRED EMBODIMENT OF THE INVENTION

Referring now to the drawings, there is shown in FIG. 1 the general block diagram of the automatic loan processing terminal system. The system links a financial institution 1, a plurality of self-service terminals at various remote sites 2 and a credit rating service 3 by telephone lines or other means of telecommunication. The financial institution 1 is provided with a central processor 4 which is used primarily to process loan applications and handle other financial transactions. The central processor 4 has a communication interface which allows it to access the various terminals 5 at the remote sites and be accessed by them at any time of the day. A communication control unit 6 associated with the central processor 4 assures an orderly sending and receiving of information between the terminals and the central processor. The communication control unit 6 provides for a quick transfer of batches of information to and from the terminals 5 under direct access memory mode. Direct access memory modes are achieved by means of high speed data exchange units such as those manufactured by Metacomp, Inc. of San Diego, Calif. and sold under the mark META-PAKS. The central processor 4 is also provided with a terminal monitor and update unit 7 which is programmed for periodically polling the various terminals 5 in order to verify their status and proper operation and to update the data stored in those terminals as may be required. The memory 8 of the central processor 4 holds some files 9 in which are stored information about the various loans available to customers from the institution. This information includes loan rates and repayment schedules. These loans include real estate loans, loans to finance the purchase of automobiles, boats and other vehicles, personal loans secured by certificates of deposit, stocks and other assets controlled by the financial institution 1 and unsecured personal loans. Loan packages which have been quoted to customers are stored in a quoted case file 10 pending acceptance and execution by the applicant. Once a loan has been approved and accepted it is processed and monitored through and active case file 11. The credit rating service 3 is an institution such as TRW CREDENTIAL SERVICE which maintains financial files of consumers based on past and current loan payment obligations, credit card uses and balance sheets provided as part of loan applications, and makes that information available to a membership of merchants and financial institutions who need to access the credit worthiness of a particular customer. The credit rating service information is processed automatically by a data processor 12 equipped with auto-

US 6,289,319 B1

3                                                                                          4

matic communication interface. This interface allows direct access through telephone lines or other communication networks by any subscribing member. The confidentiality of the credit rating service files is guaranteed by use of identifying codes which must be provided with each request.

The system operates as follows. The central processor **4** of the financial institution **1** periodically sends to the terminals **5** at the various remote sites **2** loan rate information and other data pertinent to the loans available from that institution which are extracted from the loan rate file **9**. That information is stored in the various terminals and can be reviewed by an applicant in need of a loan. Once the applicant has selected a type of loan which is available from the institution, he is asked to provide the pertinent personal information data which will be necessary to process his loan application. The information provided by the applicant is supplemented by a financial profile obtained directly from the credit rating service after being automatically requested by the terminal **5**. The terminal **5** is programmed to compute the credit worthiness of the applicant and to approve or disapprove the loan. Once the loan has been approved the applicant is requested to accept it or reject it. Accepted loan information is transmitted to the central processor of the financial institution and stored in the active case file **11**. Information about loans which have not been accepted on the spot, are also transmitted to the financial institution and stored for a period of time in the quoted case file **10**. The customer can return to one of the terminals and accept that loan anytime during the validity period.

Turning now to FIG. **2**, there is shown a block diagram of the various components of a terminal **5**. The operation of the terminal is controlled by a data processor **13**. To the left of the processor, various blocks represent the peripheral equipment which interfaces with the applicant. To the right of the processor there is shown a videodisc **14** on which are stored all the permanent data necessary for the operation of the terminal including the data necessary to effectuate the interactive and automatic request of information by the terminal from the applicant. A modem **15** provides a two-way communication channel with the financial institution **1** and the credit rating service **3**. The modem is controlled by the data processor **13** and handles a batch of information through a direct memory access unit **16**, to and from a RAM memory **17**. Thus, the RAM memory can be used to hold data obtained from the loan rate files **9** at the financial institution as well as applicant's financial profiles obtained from the credit rating service **3**. The RAM memory can also be used to store some of the operating routines necessary for the operation of the terminal.

Communication with the applicant is done mainly through the video screen **18**. The video screen **18** displays the picture of a fictitious loan officer who informs the applicant about the various types of loans available as well as the manner in which the application can be filed. The applicant answers the request of a loan officer by means of a touch pad **19** or a keyboard. Any entry made by the applicant on the touch pad **19** is processed and orally repeated immediately by means of a voice synthesizer **20** and loud speaker **21**. The oral expression of the answers provided by the applicant is a way to assure that no false entry is made. A magnetic strip reader **22** may be provided so that the applicant can give an account number or an identification by means of a credit card. A printer **23** is used to deliver to the applicant a hard copy of any loan quotation as well as a confirmation of his accepted loan.

FIG. **3** is a flow diagram of the system operation during the initial phase of the loan application process. The start **24** of system operation is triggered either by the applicant pushing a start button or by the automatic detection of his presence in front of the terminal. Once the system is activated **25** the recording of an image and sound of a fictitious loan officer is read from the videodisc **14** and appears on the video screen **18**. The fictitious loan officer takes the applicant through a language selection routine **26–29**. In this case, the applicant is asked in both English and Spanish in what language the loan transaction is to be conducted. In this phase of the operation as well as all interactive communications between the loan officer and the applicant, the loan officer explains to the applicant how to enter his answer by means of the touch pad **19**. The applicant is then asked whether a previous quotation has already been prepared for him **30**. In the affirmative, he is then requested **31** to enter a pass number or identification number either by entering the number on the touch pad or by running his credit I.D. card through the strip reader **22**. The terminal then addresses the financial institution and requests **32** the prior loan quotation stored in the quoted case file **10** of the central processor **4**. This is done by the data processor **13** of the terminal dialing the institution phone number through the modem **15** and sending a request message. The terminal goes into a standby mode with its DMA unit **16** waiting for a transfer of information from the line into the RAM memory **17**. The continued operation depends on whether or not the previous quotation is found **34** to be on file. If the answer is negative, the fictitious loan officer instructs **35** the applicant how to proceed to apply for a loan. In the case where a previous quotation is found to be on file, that quotation is transferred to the terminal according to the program routine B illustrated in FIG. **5**.

FIG. **4** is the flow diagram of the system operation during the acquisition of information by the terminal from the applicant. The applicant is first asked to select **36** the type of loan in which he is interested. In this case, he is offered a menu allowing him to choose between a real estate loan **38**, a vehicle loan **39**, a personal loan **40** secured by an asset held by the financial institution or a personal unsecured loan **41**. Any invalid selection **37** triggers a new request. Once a type of loan has been selected, a real estate loan for example, the fictitious loan officer asks a series of inquiries corresponding to the questions that would be found on a standard loan application form. For each question, the system performs a subroutine **42–45** designed to guarantee proper input of the information into the terminal memory **17**. If a problem develops during the question and answer period, the applicant is invited to call **44** the loan service at the financial institution. If the answer to a question is not received within fifteen seconds **45**, the process of application is presumed to have been abandoned by the applicant and the system returns to its initial standby state. Once all the proper answers have been accepted, they are processed **46** by the terminal data processor **13**. This process may involve analyzing certain key answers in order to identify any element or data that would automatically disqualify the applicant. Depending upon the result of that first analysis, more questions **47** may be presented to the applicant in order to refine the data necessary for a thorough assessment of his qualifications.

Turning now to FIG. **5**, the B subroutine used to receive a previous quotation from the financial institution is illustrated in the first flow diagram. Once the previous quotation is requested **48** the DMA unit **16** of the terminal is allowed to receive a batch of information containing the previous quotation. This batch of information is stored in the RAM memory **17** from where it is fetched **50** and displayed **51** on

US 6,289,319 B1

5

the video screen **18**. The applicant is then asked if he wants a hard copy **52** of the quotation. In the affirmative, the previous quotation is printed **53** on printer **23**. The second flow diagram corresponds to the acquisition of the applicant's financial profile from the credit rating service **3**. Once a loan quotation has been presented to thus applicant he is asked whether or not he wants to apply for the loan **54**. If his answer is negative, the fictitious loan officer expresses final greetings **55**. The loan quotation, if not already in storage at the financial institution, is transmitted there for temporary storage in the quoted case file **10** of the central processor **4**. If the applicant wishes to apply for the loan, he is asked to provide a password or identification **56** which will allow the terminal to access his file at the credit rating service **3**. As previously explained, this number can be entered directly by means of an identification card run through the strip reader **22** or entered manually **57** by means of the touch pad **19**. The terminal requests a rating **58** from the credit rating service **3** in a manner similar to the one used and described previously for obtaining a previous quotation from the financial institution. The applicant's financial profile is received as a batch of information through the DMA unit **59** and then read from the memory **60**. The financial profile is then analyzed by the terminal in order to compute **61** a debt ratio or other criterion devised by the financial institution to access the credit worthiness of the applicant. The debt ratio is the ratio of the applicant's current expenses to his current income. Other parameters such as debt to equity ratio or fixed assets to debt may be computed by the terminal data processor **13** and used in determining the qualifications of the applicant. It should be noted that the entire decision whether or not to grant the loan is performed automatically and onsite by the terminal **5** without intervention whatsoever from any of the financial institution personnel, except in case of a breakdown in communications by requesting a direct phone call by the applicant to the financial institution.

The last flow diagram on the drawing represents the final phase of the loan application transaction. Once the terminal equipment has determined that the applicant qualifies **62** for the loan, the applicant is so notified **63**, and instructed how to obtain the loan funds. The institution is also notified **65**, and the loan is processed through the active case file **11** by the central processor **4**. The fictitious loan officer closes the transaction by giving his final greetings **66** before the system is returned to a standby condition. If the applicant does not qualify for the amount of loan requested, he is first asked whether a lesser amount **67** would be acceptable to him. He is then instructed to enter the lesser amount **68** through the touch pad **19**. That new amount is then checked against the determination already made by the terminal. The process is repeated until an acceptable amount is requested by the applicant, or until such time as the applicant declines to proceed with the loan application.

It should be noted that the system as described could be applied to other forms of transactions in which information has to be acquired from a customer then processed to a decision or into the performance of a particular task. A similar system could be used, for instance, for the preparation and filing of income tax returns. In such case, the assistance that the fictitious person who appears on the video screen can give to the applicant in filling-out the tax form can be easily programmed on the videodisc.

Other applications of the system include the selection and purchase of stocks and other securities, the selection and opening of so-called "self-directed investments" such as Individual Retirement Accounts, and other complex transactions which normally require a great deal of time and attention on the part of the officers of an institution.

6

While the preferred embodiment of the invention has been described and other modifications have been suggested, other embodiments may be devised without departing from the spirit of the invention and the scope of the appended claims.

What is claimed is:

1. An automatic data processing system for processing business and financial transactions between entities from remote sites which comprises:

a central processor programmed and connected to process a variety of inquiries and orders transmitted from said remote sites;

said central processor including:

means for receiving information about said transactions from said remote sites;

means for retrievably storing said information;

at least one terminal at each of said remote sites including a data processor and operational sequencing lists of program instructions;

means for remotely linking said terminal to said central processor and for transmitting data back and forth between said central processor and said terminal;

said terminal further comprising means for dispensing information and services for at least one of said entities including:

a video screen;

means for holding operational data including programing, informing, and inquiring sequences of data;

means for manually entering information;

means for storing information, inquires and orders for said transactions entered by one of said entities via said means for manually entering information, and data received through and from said central processor;

on-line means for transmitting said information, inquiries, and orders to said central processor;

on-line means for receiving data comprising operator-selected information and orders from said central processor via said linking means;

means for outputting said informing and inquiring sequences on said video screen in accordance with preset routines and in response to data entered through said means for entering information;

means for controlling said means for storing, means for outputting, and means for transmitting, including means for fetching additional inquiring sequences in response to a plurality of said data entered through said means for entering and in response to information received from said central processor;

said informing sequences including directions for operating said terminal, and for presenting inter-related segments of said operational data describing a plurality of transaction operations;

said programming sequences including means for interactively controlling the operation of said video screen, data receiving and transmitting means; and for selectively retrieving said data from said means for storing;

said means for storing comprising means for retaining said operational sequencing list and means responsive to the status of the various means for controlling their operation;

said central processor further including:

means responsive to data received from one of said terminals for immediately transmitting selected stored information to said terminal; and

US 6,289,319 B1

7

means responsive to an order received from a terminal for updating data in said means for storing; whereby said system can be used by said entities, each using one of said terminals to exchange information, and to respond to inquiries and orders instantaneously and over a period of time.

**2**. The system of claim **1**, wherein said terminal further comprises means for generating a personal qualification report including means for determining the type and amount of goods or services which can be provided to an entity wherein said means for determining comprises means for mathematically processing said information entered through said means for entering.

8

**3**. The system of claim **1**, wherein said inquiring and informing sequences of data comprise textual and graphical data.

**4**. The system of claim **3**, wherein said means for outputting further comprise means for generating audible informing and inquiring messages.

**5**. The system of claim **4**, wherein said means for outputting further comprise means for synchronizing said audible messages with said textual and graphical data.

**6**. The system of claim **3**, wherein said means for holding comprise an optical disc.

* * * * *

US006289319C1

(12) **EX PARTE REEXAMINATION CERTIFICATE** (5817th)

# United States Patent
Lockwood

(10) **Number:** US 6,289,319 C1

(45) **Certificate Issued:** Jul. 17, 2007

(54) **AUTOMATIC BUSINESS AND FINANCIAL TRANSACTION PROCESSING SYSTEM**

(76) Inventor: **Lawrence B. Lockwood**, 5935 Folsom Dr., La Jolla, CA (US) 92037

**Reexamination Request:**
No. 90/006,623, May 5, 2003

**Reexamination Certificate for:**
Patent No.: **6,289,319**
Issued: **Sep. 11, 2001**
Appl. No.: **08/347,270**
Filed: **Nov. 30, 1994**

**Related U.S. Application Data**

(63) Continuation of application No. 08/096,610, filed on Jul. 23, 1993, now abandoned, and a continuation of application No. 07/752,026, filed on Aug. 29, 1991, now abandoned, and a continuation of application No. 07/168,856, filed on Mar. 16, 1988, now abandoned, and a continuation of application No. 06/822,115, filed on Jan. 24, 1986, now abandoned, which is a continuation-in-part of application No. 06/613, 525, filed on May 24, 1984, now Pat. No. 4,567,359.

(51) **Int. Cl.**
*G06Q 40/00* (2006.01)

(52) **U.S. Cl.** .............................. **705/35**; 705/1; 705/38; 705/39

(58) **Field of Classification Search** .................... 705/1, 705/30–40; 707/1, 4, 6, 102; 706/20, 21; 715/700
See application file for complete search history.

(56) **References Cited**

PUBLICATIONS

"Electronic Mail", American Media Group 1986.*
Viewdata, "First World Conference on Viewdata & Tele-Text", Mar. 26–28, 1980, London, published by Online Conferences Ltd., Northwood Hills, Middx.*
Comp–U–Store System Could Change Retail Economics, Interview with Erik Shelton, president Consumer Electronic Service, Jul. 1983.*

GloveCom 1982, IEEE Global Communications Conference, Conference Record, vol. 3 of 3, LC 82–82566, IEEE Catalog No. 82CH1819–2.*
"CD Airs Electronic Catalog on Toronto", Discount Store News, The Newspaper of the Discount Department Store Industry, vol. 22, No. 3, published Biweekly, by Arthur Markowitz, Feb. 7, 1983.*
Prestel 1980, Sample images of Prestel 1980.*
Kleinberg, "How Video Will Change the Sale", Apr. 1981, Industrial Marketing.*
IVIS Puts the Power of Sight, Sound and Touch Into Your Information Picture, 1984. Digital Equipment Corporation.*
"P–oP Video disc Devices Help Clerk Sells More Products", Merchandising, Jan. 1984.*
"Improving Retail Productivity", How Retailers and Suppliers Can Improve Their Use of Stock, Space, Staff and System, An Iris executive conference, Thursday Oct. 20, 1983.*
Browning, Graeme, UPI Business Writer, UPSI, Regional News, Nov. 1, 1983, Tuesday, BC cycle.*

* cited by examiner

*Primary Examiner*—Frantzy Poinvil

(57) **ABSTRACT**

A system for filing applications with an institution from a plurality of remote sites, and for automatically processing said applications in response to each applicant's credit rating obtained from a credit reporting service comprising a series od self-service terminals remotely linked via a telephone line to a first computer at the institution and to a second computer at the credit reporting service headquarters. Each remote terminal comprises a video screen and a video memory which holds image-and-sound-generating information arranged to simulate the aspect and speech of an application loan officer on the video screen. The simulated loan officer is used to acquire loan request data from the applicant by guiding him through an interactive sequence of inquiries and answers. The terminal is programmed to acquire credit rating data relating to the applicant from the credit rating service, and to use the data to compute the credit worthiness of the applicant and the amount which may be loaned to him. The approved loan information is then



**US 6,289,319 C1**

Page 2

transmitted to the first computer for further processing by
the financial institution.

US 6,289,319 C1

1

# EX PARTE REEXAMINATION CERTIFICATE ISSUED UNDER 35 U.S.C. 307

THE PATENT IS HEREBY AMENDED AS INDICATED BELOW.

**Matter enclosed in heavy brackets [ ] appeared in the patent, but has been deleted and is no longer a part of the patent; matter printed in italics indicates additions made to the patent.**

AS A RESULT OF REEXAMINATION, IT HAS BEEN DETERMINED THAT:

Claim **1** is determined to be patentable as amended.

Claims **2**–**6**, dependent on an amended claim, are determined to be patentable.

New claims **7**–**28** are added and determened to be patentable.
+ig
**1**. An automatic data processing system for processing business and financial transactions between entities from remote sites which comprises:

a central processor programmed and connected to process a variety of inquiries and orders transmitted from said remote sites;

said central processor including:

    means for receiving information about said transactions from said remote sites;

    means for retrievably storing said information;

    at least one terminal at each of said remote sites including a data processor and operational sequencing lists of program instructions;

    means for remotely linking said terminal to said central processor and for transmitting data back and forth between said central processor and said terminal;

said terminal further comprising means for dispensing information and services for at least one of said entities including:

    a video screen;

    means for holding operational data including programing, informing, and inquiring sequences of data;

    means for manually entering information;

    means for storing information, [inquires] *inquiries* and orders for said transactions entered by one of said entities via said means for manually entering information, and data received through and from said central processor;

    on-line means for transmitting said information, inquiries, and orders to said central processor;

    on-line means for receiving data comprising operator-selected information and order from said central processor via said linking means;

    means for outputting said informing and inquiring sequences on said video screen in accordance with preset routines and in response to data entered through said means for entering information;

    means for controlling said means for storing, means for outputting, and means for transmitting, including means for fetching additional inquiring sequences in response to a plurality of said data entered through said means for entering and in response to information received from said central processor;

2

    said informing sequences including directions for operating said terminal, and for presenting inter-related segments of said operational data describing a plurality of transaction operations;

    said programming sequences including means for inter-actively controlling the operation of said video screen, data receiving and transmitting means; and for selectively retrieving said data from said means for storing;

    said means for storing comprising means for retaining said operational sequencing list and means responsive to the status of the various means for controlling their operation;

    said central processor further including:

        means responsive to data received from one of said terminals for immediately transmitting selected stored information to said terminal; and

        means responsive to an order received from a terminal for updating data in said means for storing;

        whereby said system can be used by said entities, each using one of said terminals to exchange information, and to respond to inquiries and orders instantaneously and over a period of time.

*7. The system of claim 1, wherein said means for storing comprise a Random Access Memory associated with said data processor.*

*8. The system of claim 1, wherein said means for holding operational data comprise a mass memory device.*

*9. The system of claim 8, wherein said mass memory device comprises a storage disk.*

*10. The system of claim 1, wherein said programming sequences comprise operational data received from said central processor for selecting program instructions from said means for storing and said means for holding, and executing said program instructions.*

*11. The system of claim 1, wherein said inquiring sequences comprise questions to be presented to an operator of said terminal.*

*12. The system of claim 11 which further comprises means for presenting said questions in audio-visual form.*

*13. The system of claim 12, wherein said audio-visual form comprises images of a fictitious person.*

*14. The system of claim 1, wherein said transactions comprise purchase of stock and securities.*

*15. The system of claim 1, wherein said transactions comprise filing of income tax returns.*

*16. The system of claim 1, wherein said transactions comprise obtaining a loan.*

*17. The system of claim 1, wherein said transactions comprise opening of an investment account.*

*18. The system of claim 1, wherein said dispensing information and services comprises displaying information received from said central processor.*

*19. The system of claim 1, wherein said preset routines are held in said means for storing.*

*20. The system of claim 1, wherein said means for controlling is operative to direct at least one of said inquiring sequence to said central processor.*

*21. The system of claim 3, wherein said textual data comprises letters, words, phrases and numbers.*

*22. The system of claim 3, wherein said graphical data comprise business and financial transaction forms.*

*23. The system of claim 3, wherein said graphical data further comprises business and financial charts.*

*24. The system of claim 1, wherein said business and financial transactions are performed by an agent of said entity.*

US 6,289,319 C1

**3**

25. The system of claim 1, wherein said means for transmitting comprise a communication network.

26. The system of claim 25, wherein said communication network comprises a telephone line.

27. The system of claim 1, wherein said directions for operating said terminal, and for presenting interrelated

**4**

segments of said operational data describing a plurality of transaction operations comprise menus.

28. The system of claim 11, wherein said questions are presented as menus.

\* \* \* \* \*

US006289319C2

(12) **EX PARTE REEXAMINATION CERTIFICATE** (9470th)

# United States Patent

Lockwood

(10) **Number:** **US 6,289,319 C2**

(45) **Certificate Issued:** **Jan. 9, 2013**

(54) **AUTOMATIC BUSINESS AND FINANCIAL TRANSACTION PROCESSING SYSTEM**

(76) Inventor: **Lawrence B. Lockwood**, La Jolla, CA (US)

**Reexamination Request:**
No. 90/012,641, Sep. 14, 2012

**Reexamination Certificate for:**

| | |
|---|---|
| Patent No.: | **6,289,319** |
| Issued: | **Sep. 11, 2001** |
| Appl. No.: | **08/347,270** |
| Filed: | **Nov. 30, 1994** |

Reexamination Certificate C1 6,289,319 issued Jul. 17, 2007

### Related U.S. Application Data

(63) Continuation of application No. 08/096,610, filed on Jul. 23, 1993, now abandoned, and a continuation of application No. 07/752,026, filed on Aug. 29, 1991, now abandoned, and a continuation of application No. 07/168,856, filed on Mar. 16, 1988, now abandoned, and a continuation of application No. 06/822,115, filed on Jan. 24, 1986, now abandoned, which is a continuation-in-part of application No. 06/613,525, filed on May 24, 1984, now Pat. No. 4,567,359.

(51) **Int. Cl.**
**G06Q 40/00** (2006.01)

(52) **U.S. Cl.** ............... **705/35**; 705/1.1; 705/38; 705/39

(58) **Field of Classification Search** ........................ None
See application file for complete search history.

(56) **References Cited**

To view the complete listing of prior art documents cited during the proceeding for Reexamination Control Number 90/012,641, please refer to the USPTO's public Patent Application Information Retrieval (PAIR) system under the Display References tab.

*Primary Examiner* — Karin Reichle

(57) **ABSTRACT**

A system for filing applications with an institution from a plurality of remote sites, and for automatically processing said applications in response to each applicant's credit rating obtained from a credit reporting service comprising a series of self-service terminals remotely linked via a telephone line to a first computer at the institution and to a second computer at the credit reporting service headquarters. Each remote terminal comprises a video screen and a video memory which holds image-and-sound-generating information arranged to simulate the aspect and speech of an application loan officer on the video screen. The simulated loan officer is used to acquire loan request data from the applicant by guiding him through an interactive sequence of inquiries and answers. The terminal is programmed to acquire credit rating data relating to the applicant from the credit rating service, and to use the data to compute the credit worthiness of the applicant and the amount which may be loaned to him. The approved loan information is then transmitted to the first computer for further processing by the financial institution.



US 6,289,319 C2

**1**

**EX PARTE
REEXAMINATION CERTIFICATE
ISSUED UNDER 35 U.S.C. 307**

NO AMENDMENTS HAVE BEEN MADE TO
THE PATENT

**2**

AS A RESULT OF REEXAMINATION, IT HAS BEEN
DETERMINED THAT:

The patentability of claims **1-28** is confirmed.

\* \* \* \* \*